UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
CIVIL DIVISION

ANGELA WOODS, individually
and on behalf of all others
similarly situated,

    Plaintiff,

v.                                                                                                 Case No.:

THE HERSHEY COMPANY,
A Foreign Profit Corporation,

    Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff, Angela Woods ("Plaintiff"), hereby files this Class Action Complaint against Defendant, The Hershey Company ("Defendant"), alleging that Defendant failed to provide her and the putative class adequate notice of their right to continued health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

1.    Defendant, the plan sponsor of the Health Plan ("Plan"), has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health insurance coverage following an occurrence of a "qualifying event" as defined by the statute.

2.    Defendant's COBRA notice violates 29 C.F.R. § 2590.606–4(b)(4)(viii) because it fails to include a termination date for COBRA coverage if elected. The notice also violates COBRA because it fails to sufficiently identify the Plan Administrator.

3.    Because Defendant's COBRA notice omits several critical information items, it collectively violates 29 C.F.R. § 2590.606–4(b)(4), which requires the plan administrator of a

group-health plan to provide a COBRA notice "written in a manner calculated to be understood by the average plan participant." Without information on *when* COBRA coverage ends, and *who* is the Plan Administrator, the notice is not written in a manner calculated to be understood by the average plan participant.

4. As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION AND VENUE

5. Venue is proper in the United States Court for the Western District of Tennessee, because the events giving rise to these claims arose in this district.

6. Plaintiff is a Tennessee resident, resides in this district and was a participant in the Plan prior to her termination, a qualifying event within the meaning of 29 U.S.C. § 1163(2).

7. Defendant is a foreign corporation with its headquarters in Hershey, Pennsylvania and employed more than 20 employees who were members of the Plan in each year from 2014 to 2018. Defendant is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

## FACTUAL ALLEGATIONS

### *COBRA Notice Requirements*

8. The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event"

as defined by the statute.

9. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161. (Emphasis added).

10. Notice is of enormous importance. The COBRA notification requirement exists because employees are not presumed to know they have a federally protected right to continue healthcare coverage subsequent to a qualifying event.

11. COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

12. The relevant regulations prescribed by the Secretary of Labor concerning notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

> (4) The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:
>
> > (i) The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;
> >
> > (ii) Identification of the qualifying event;
> >
> > (iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v) An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii) A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii) An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the

length of any such extension;

(x) In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

13.     To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.  A copy of this Model Notice is attached hereto as Exhibit "A."  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

14.     In the event that a plan administrator declines to use the Model Notice and fails to

meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110.00 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). Additionally, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1). Such is the case here.

15. Here, Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

16. Defendant did not use the Model Notice to notify plan participants of their right to continuation coverage.

17. Rather than use the Model Notice, Defendant deliberately authored and disseminated a notice which omitted critical information required by law. The information Defendant omitted from its notice is information that is included in the Model Notice.

18. The evidence will show Defendant used its [deficient] Notice to discourage participants from enrolling in continuation coverage.

19. Defendant's Notice violates several key COBRA requirements, specifically:

   a. The Notice violates 29 C.F.R. § 2590.606-4(b)(4)(viii) because it fails to provide an explanation of the continuation coverage termination date;

   b. The Notice violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits; and, finally,

   c. The Notice violates 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.

20. The evidence will show Defendant's standard practice during the time period at issue in this lawsuit was to send the COBRA election notice first, then send additional COBRA election information only to those that elected COBRA coverage (instead of to all individuals eligible for COBRA). This second document contained the information omitted from the initial notice.

21. Defendant's COBRA Notice confused Plaintiff, and resulted in her inability to make an informed decision as to electing COBRA continuation coverage.

22. As a result of the deficient notice, Plaintiff did not elect COBRA continuation coverage.

23. Defendant's deficient COBRA Notice caused Plaintiff an informational injury when Defendant failed to provide her with information to which she was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members she represents by failing to provide the information required by COBRA.

24. Besides the informational injury suffered, Plaintiff also suffered a tangible injury in the form of economic loss, specifically the loss of health insurance coverage for herself and her dependents. Insurance coverage is an employer subsidized benefit of employment of monetary value, the loss of which is a tangible injury.

25. Plaintiff also suffered a tangible economic loss, as she paid out of pocket for medical expenses incurred by herself and her dependents up until the time Plaintiff was able to

obtain health insurance through a subsequent employer.

### *Plaintiff Angela Woods*

26. Plaintiff was employed by Defendant for nearly four years, during which time she obtained medical insurance for herself and dependents through Defendant's group health plan.

27. On or around October 9, 2018, Plaintiff's employment was terminated. Plaintiff was not terminated for "gross misconduct" and was therefore eligible for continuation coverage.

28. Plaintiff's termination was a qualifying event (termination of employment), which triggered Defendant's COBRA obligations.

29. On or around October 16, 2018, Defendant mailed Plaintiff the [deficient] COBRA notice.

30. The COBRA notice was not written in a manner calculated to be understood by the average plan participant.

31. The COBRA notice did not provide Plaintiff with the substantive information to which she was entitled pursuant to federal law.

32. The COBRA notice violated 29 C.F.R. § 2590.606-4(b)(4)(viii) because it failed to provide an explanation of the continuation coverage termination date, omitting it entirely. Thus, it was nearly impossible for Plaintiff or any other plan participant to calculate the coverage termination date.

33. The COBRA notice violated 29 C.F.R. § 2590.606-4(b)(4)(xii) because it failed to include information about how participants can lose COBRA coverage before the [omitted] termination date. For example, a participant can lose coverage if they become eligible under another group health plan, become Medicare eligible or do not make timely payments.

34. Plaintiff was not required to exhaust any administrative remedies through

Defendant prior to bringing suit because no such administrative remedies exist. Even if they did, any attempts to exhaust the administrative remedies would have been futile.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(viii)*
### *Failure to provide an explanation of the continuation coverage termination date*

35. The governing statute requires Defendant to provide a COBRA election notice that discloses "an explanation of the maximum period for which continuation coverage will be available under the plan" and "an explanation of the continuation coverage termination date." 29 C.F.R. § 2590.606-4(b)(4)(viii).

36. This information not only informs Plaintiff of the length of coverage, if elected, but also the specific date on which such coverage will terminate. This information is very important for deciding whether to elect coverage.

37. Continuation coverage is not designed to be permanent. Traditionally, continuation coverage is used as a temporary solution until a qualifying participant obtains new coverage under a different group health plan. Thus, election notices must be sufficient to permit the discharged employee to make an informed decision whether to elect coverage.

38. Plaintiff cannot truly make an informed decision regarding continuation coverage without knowing the specific date when coverage will end and when they will be uninsured.

39. Here, Plaintiff was only provided with the length of continuation coverage, but was never notified *when* the coverage, if elected, would terminate.

40. Even if Plaintiff had tried to use a calendar to determine the termination date, using an 18-month window, she would not be able to determine whether this monthly coverage would terminate at the beginning of the 18th month, the end of the 18th month or 18 months to the day of eligibility.

41. The statute requires these disclosures specifically to avoid this type of confusion

surrounding a matter as important as electing health insurance. Furthermore, a fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally. Without the required disclosures, Defendant's notice does not permit Plaintiff to make an informed decision and is therefore deficient.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i)*
### *Failure to Identify Plan Administrator*

42. The COBRA notice provided to Plaintiff omitted important information identifying the party responsible under the Plan for administration of continuing coverage benefits. The generic phrase "Plan Administrator" is included no less than ten (10) separate times throughout the notice, but not once is the Plan Administrator actually identified. Instead, the third-party administrator, WageWorks, is identified and The Hershey Company is merely referred to as the "employer." Thus, Plaintiff was never informed *who* administers the continuation coverage.

43. Defendant was required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606-4(b)(4)(i). Defendant's Notice failed to comply with this fundamental requirement.

44. Defendant's notice only identifies a third-party administrator, WageWorks. A third-party administrator is different from the Plan Administrator. Identifying the Plan Administrator is critical because the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee.

*Violation of 29 C.F.R. § 2590.606-4(b)(4)*
*Failure to Provide COBRA Notice Written in a Manner*
*Calculated "To Be Understood By the Average Plan Participant"*

45. The COBRA notice Plaintiff received from Defendant failed to fully explain the procedures for electing coverage; omitted information regarding the coverage end date; omitted information pertaining to the consequences of delinquent or missed payments; and failed to identify the Plan Administrator. Combined, Defendant's omissions are a violation of 29 C.F.R. § 2590.606- 4(b)(4). This particular section mandates employers provide notice of continuation coverage written in a manner calculated "to be understood by the average plan participant." By omitting critical information, Defendant's notice is not written in a manner calculated "to be understood by the average plan participant." 29 C.F.R. § 2590.606-4(b)(4)(v).

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this action as a class action pursuant to Rule 23 Fed.R.Civ.P. on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant, who did not elect COBRA**.

47. No administrative remedies exist as a prerequisite to Plaintiff's claim on behalf of the Putative Class. As such, any efforts related to exhausting such non-existent remedies would be futile.

48. <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief, hundreds or thousands of individuals satisfy the definition of the Class.

49. <u>Typicality</u>: Plaintiff's claims are typical of the Class. The COBRA notice that

11

Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received, and suffered from the same deficiencies.

50. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class members; she has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

51. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

    a. Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1);

    b. Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    c. Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

    d. The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

    e. Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

52. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification will also

obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

53. Plaintiff intends to send notice to all Class Members. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party administrator, WageWorks.

## CLASS CLAIM I FOR RELIEF

*Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

54. Plaintiff re-states the allegations set forth in Paragraphs 21-45 as if fully set forth herein.

55. The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

56. Defendant is the sponsor and administrator of the Plan, and was subject to the continuation of coverage and notice requirements of COBRA.

57. Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

58. On account of such qualifying event, Defendant sent Plaintiff and the Class Members a non-compliant COBRA notice.

59. The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above.

60. These violations were material and willful.

61. Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows:

    a.    Designating Plaintiff's counsel as counsel for the Class;

    b.    Issuing proper notice to the Class at Defendant's expense;

    c.    Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

    d.    Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

    e.    Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110.00 per day for each Class Member who was sent a defective COBRA notice by Defendant;

    f.    Awarding attorneys' fees, costs and expenses to Plaintiffs' counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

      g.      Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 18th day of June, 2020.

                                          /s/ *Marc R. Edelman*
                                          **MARC R. EDELMAN, ESQ.**
                                          Fla. Bar No. 0096342
                                          **MORGAN & MORGAN, P.A.**
                                          201 N. Franklin Street, Suite 700
                                          Tampa, FL 33602
                                          Telephone 813-223-5505
                                          Fax:  813-257-0572
                                          Email: MEdelman@forthepeople.com
                                          *Attorney for Plaintiff*